If I may reserve two minutes of my time. The issue in this case at this point is what is the proper remedy, whereas here the district court improperly revoked a criminal defendant's supervised release, despite the fact that the court lacked jurisdiction to do so. But the case is rendered moot on appeal due to the fact that the district court did not provide a proper remedy. The district court had no jurisdiction in the first place to revoke or suspend his freedom. But the issue that was raised before the district court and in the appeal was the fact that the district court lacked jurisdiction to revoke Mr. Juarez's supervised release because of the fact that the district court did not provide a proper remedy. And the second prong is that the warrant needs to be executed within a reasonably necessary period of time. And the issue which was raised before the district court was the fact that the warrant was not issued within a reasonably necessary period of time. The warrant, if you can call it that, was issued, wasn't executed for four years. The government, the Federal Government, knew exactly where Mr. Juarez was in State custody at the time that the warrant was requested. And they knew his release date, but they never went and arrested him. Instead, the Federal Government deported him. And four years later, after he had returned to the United States, they thought to revoke his supervised release, which had expired. And they clearly — Well, following up on Judge Beezer's question, I — there seem to be two routes to finding no jurisdiction. One would be to say, well, if we agreed with you, the district court had no jurisdiction, and therefore nobody has any jurisdiction. Therefore — and the other way would be to say, I suppose that would still require us to reverse. And if it's truly moot, maybe we can't do that. Maybe we wouldn't have jurisdiction over a moot case. Well — I know your — your point that you want a Munsingware dismissal if we determine that the case is moot, as the government has suggested. That's correct. And vacature is the — is a procedure which is commonly utilized to prevent a judgment unreviewable because of mootness from spawning any legal consequences. And it's an open question at this point whether or not that principle applies in the criminal context. Several other circuits, including the D.C. Circuit, the Fifth Circuit, and the Eleventh Circuit, have decided that the vacature principle — have held that the vacature principle does extend to the criminal context. And the only case that I'm aware of in the Ninth Circuit is United States v. Tapia Marquez, which is quite different from the circumstances in this case, because in Tapia Marquez, first of all, the issue was not a jurisdictional issue. And second of all, the Court determined that vacature wouldn't be appropriate in that case because the issue that was raised was clearly precluded by very recent precedent, and so that the issues that are implicated and which vacature seems to — seeks to remedy were not implicated. In other words, the individual in that case hadn't really been deprived of meaningful appellate review because the same attorney in that case had raised the issue in a very similar case, and the issue was precluded. So the issue had been subjected to meaningful appellate review. The implications of this get kind of puzzling when you think of a regular conviction, not just a revocation of supervised release. Somebody could get sentenced to 12 months in prison, no supervised release, nothing. And by the time we get it, he's served it. And we usually go ahead and review it anyway because we say there are collateral consequences to a conviction. But he could get up and say, I'll accept the collateral consequences. I don't care. It's moot. I'm quite willing to have it declared moot. And now that you've declared it moot, vacate the conviction. Well, there are, in that context, the Court presumes collateral consequences. Yeah. I suppose we wouldn't accept his disavowal of the collateral consequences. The peculiarity here, I guess, is that we've said or somebody has said that there aren't collateral consequences to a served sentence on revocation of supervised release. Well, I don't think that it's ever been clearly decided with supervised release. In Spencer v. Chemna, the United States Supreme Court was determining whether or not that would apply in the context of parole. And I think what the Court said was that they weren't presuming the same consequences, that the burden, that collateral consequences had to be demonstrated. There are collateral consequences under the guidelines which are no longer binding. This could cause additional criminal history points. And so there is a real interest in the decision at least being vacated in case the individual comes back, as Mr. Juarez, looking at his history, has come back to the United States several times. He's an alien, isn't he? Is he going to seek admission again, or is he just going to cross the border? Well, Your Honor, I can't answer that. Well, you're representing us. He's coming back. I'm a little distressed about it. That's not my representation. The point that I'm trying to make is that there are other collateral consequences. Not if he doesn't come back. Yeah, but they all come back. Well, I think the other reason that it's more necessary, even more necessary in this case, to determine, to dismiss, dismiss. Let me ask you this. The warrant was issued. What was the date?  If I may. I believe it was in 99. May. And then when was the warrant executed? How much time elapsed? December of 2003. It was over four years that had elapsed before. Over four years. Now, I seem to recall that or maybe it's the defendant that has to initiate the process. But where the provision that the warrant needs to be served within a reasonable period of time, and then the defendant, who's in custody, can ask that the matter come up for hearing. In this case, he actually did that. And then the hope is that whatever sentence is imposed for the offense on which the warrant was issued will run concurrently with his present sentence. That's correct, Your Honor. In this case, under the statute, under 3583I, the statute imposes an even higher burden on the government, and that's to execute the warrant within a reasonably necessary period of time. But getting to the second point that you made, in this case, Mr. Quattas did make that request. He affirmatively asked the Court to do that. I believe it was back in 2001, and his request was denied by the district court. Much of the delay is caused because he finishes his present sentence and gets deported, I guess, is that right? Yes. He was forcibly removed from the United States by the Federal Government. And I think that that's an important point in this case because it's different than a person who – where the warrant can't be executed because the person voluntarily absents himself from the jurisdiction. In this case, the Federal Government deported him from the United States, and he had no opportunity. Now, if some other state had simply imprisoned him because of a crime, would the government then be allowed to delay the execution of the warrant? Well, I believe under United States v. Garrett, that time period would be considered reasonably necessary because the person is in custody, and the government in that circumstance doesn't have to writ the person out of state custody to bring them into Federal custody. However, in Garrett, one of the reasons that the Court decided that the execution of the warrant was reasonably necessary was because as soon as that person finished their time in state custody, they were immediately taken into Federal custody, and only a month and a half elapsed between – But would there be any excuse if he were in Federal custody on some other charge? Your Honor, I – that's not the issue that's raised in this case. Well, I understand that. I'm just trying to wonder how much difference there would be between being in a Federal prison on a different charge and being sent out of the country on a Federal removal warrant. In this case, I don't think that there really would be a difference, because at the time the person finishes, at least when the person finishes their time in Federal custody, at that point, the Federal government should bring the person into custody and execute the supervised release revocation warrant. So whether or not they have to execute it while the person is serving their time in Federal custody on another offense is a different issue. The question that's presented here is whether or not they should execute it when the person's done with their Federal time or whether or not they can simply deport the person. Of course, I mean, probably lurking in the background here somewhere is the fact that he would have been home free if he simply hadn't reentered. That may be true. However, it doesn't – there's a statutory requirement that – that requires the government to execute the warrant within a reasonable time. Is there a statutory requirement that the government – the Federal government put a detainer on a person who's in his situation with an outstanding warrant, whether State or Federal prison? I'm not aware of a provision that requires the actual placement of a detainer, but under the – But under your argument, you would require it. Let's make it mandatory. If we wrote the way you just argued. I think that you have to look at the circumstances of the case. And in this case, they knew – In this case, the circumstances require a mandatory detainer? I think that that would have – that was required in this case because the Court knew when his sentence – the Federal government knew when his sentence was going to expire with the State, and knowing the nature of the charges, knew that if they didn't place a detainer, he would be deported from the United States. Do you have any authority I can cite to support that argument? I think the support for the argument is in the statute, because the statute requires that the case be adjudicated within a reasonably necessary period of time, not merely a reasonable period of time. And if that step is not taken by the government, then that would make it impossible for the warrant – the issue – the warrant to be executed and the case to be adjudicated within a reasonably necessary period of time, because under the facts of this case, the person would be outside of the jurisdiction of the Court by the own acts of the government, by the government's own acts. Well, it's the law that he's to be deported when he completes his sentence. And unless there's a detainer, a Federal official, prison official, is not going to hold him any longer. They're going to deport him. But you say that there must be a detainer lodged. I don't understand it. Well, I think by not lodging a detainer, the government essentially waives its right to execute the Federal supervised release revocation warrant, because the government has the burden of adjudicating that warrant under the statute within a reasonably necessary period of time. Well, you think we ought to have an evidentiary hearing to determine the reasonableness of the time, send it back to the district court for a hearing on that issue? Well, that's what the — that issue, the counsel had tried to raise that issue before the district court. And I think at this point, it's really a matter of law. And this Court has decided it in many other circumstances, the time period that's in the context — when challenges were made prior to the enactment of the statute, this Court decided what was reasonable, whether or not a certain number of years passing was reasonable. And I think one of the cases that I would point to is United States v. Hill. And although that's a case that was decided prior to the enactment of the statute, which now imposes an even higher burden on the government, it's a question for the Court, this Court, to determine. And I don't think there's an evidentiary hearing is required. Four years simply is not necessary, nor can it be reasonably necessary to deport a person from the United States in order to adjudicate proceedings. It just logically doesn't make sense. All right. Thank you. May it please the Court, Anna Luce, to roll on behalf of the United States. Your Honor, our position is the appeal is moot, and this is not the appropriate case to extend Munsingler. Is Munsingler entirely discretionary? Your Honor, in criminal cases, we believe you have the discretion whether or not to extend it to a criminal case at this point. Before I launch into it, however. Would we be deciding that it doesn't extend to criminal cases, or would we be deciding in the exercise of our discretion we don't think that this is an appropriate case to vacate? The latter, Your Honor. Okay. Before I launch into that, Your Honor, Your Honors, however, I believe it's my duty to inform this Court that the warrant that was issued in this case falls squarely within the Vargas-Amaya decision. That being said. I missed the last part of what you said. I believe it's my duty that the warrant that was issued in this case falls squarely within the Vargas-Amaya decision. We have in this case, Your Honor, a warrant that was issued based upon unsworn allegations. Now, the Vargas-Amaya decision is pending rehearing on Bonk. The government has filed a petition for rehearing. And we would ask that this Court hold the appeal until after that decision has been made. Give us the name of the case again. Vargas-Amaya, Your Honors. And the site for that. 389 Federal Third. Okay. Yes, sir. But that's the law of the circuit right now. It is the law of the circuit. It is binding, Your Honor. However. I dismiss this for lack of jurisdiction. We would ask, however, that you hold the petition as you have hold others awaiting the Booker decision. Well, you're bringing this issue to us for the first time. That is correct, Your Honor. And I apologize for that. It just, last night in reviewing this and in realizing it just came to me that this is a Vargas-Amaya petition, I mean, a warrant. And I would be remiss if I didn't inform the Court of that at this moment. Well, that's. Vargas was decided after briefing, I think. Your mootness argument is your number one argument, I guess. Absolutely, Your Honor. It is. So you wouldn't get to the second one if you prevailed on mootness. Absolutely. But, Counsel. But then if we disagree on mootness, we have to get into the second question. Yes, sir. All right. Well. What's the purpose of having the warrant in a case like this served within a reasonable period of time? I'm sorry. What is the purpose of having? What's the purpose of having a warrant, as we have in this case, served within a reasonable period of time? Why is that required? Well, so that the defendant in this case has noticed that a warrant has been issued and that he has notice of the allegations pending against him. And before the expiration of supervised release, as it did occur in this case, the warrant was issued, I think, a few months before supervised release expired. And the purpose of the warrant extends the jurisdiction of the court to revoke the defendant's supervised release. Could the defendant have called for a hearing on the revocation of probation,  I believe he asked for that, Your Honor. However, the Federal government isn't required to written out of State custody to have a hearing on the warrant. There's case law on that, Your Honors. But in this case, the warrant had to have been issued within a period of time prior to the expiration of supervised release to extend the court's jurisdiction to revoke that later on. Well, I suppose when you're extending the court's jurisdiction beyond what it would otherwise be because of this pending warrant, there's a concern that it might just run on indefinitely. Absolutely, Your Honor. And while he was in State custody and while he was in Federal custody, that time is excused under the law. However, the time that we didn't know where he was, where he was out of the court's jurisdiction, where we had the government had no idea where this defendant was, we couldn't possibly have brought him within the court's jurisdiction to hold a revocation. But he was in Federal custody, wasn't he? He was for a period of time. You don't have access to the computer system? We do, but he was the warrant. A detainer was lodged after he was in Federal custody in the Central District of California. Well, so how long was he in Federal custody before the detainer was lodged? He was in Federal custody. He was arrested on 1326 on illegal reentry charges in October of 2001. The detainer was lodged in April of 2002. That warrant was executed in December of 2003 upon his release from the Central District, serving a 30-month sentence for a violation of immigration laws. He was promptly brought for his initial appearance six days later to the Southern District. So the time in custody on another Federal charge is also told, basically. Is that correct? Yes, Your Honor. And that was three months? Three months, you say. The time that he was in Federal custody in the Central District was actually from October of 2001 to December of 2003. So that would be 26 months? So, really, the time that's in dispute is the time from the time he's released from State custody and he's briefly into Federal custody for purposes of deportation and he's deported. Which we assume that he was in purposes. I apologize, Your Honor, but there is nothing in the record to confirm or deny that he was in Federal custody and deported after he was released from State custody. The district court assumed that he might have been deported. And, of course, defense counsel argues that he has been deported. Unfortunately, we have nothing to confirm or deny that. It is possible that he was released from State custody and released into the community. Wasn't counsel's representation enough for you? Do you think she's here pulling the wool over our eyes? No, not necessarily, Your Honor, but I believe that she will argue in the best interest of her client. You know where her client is. Well, when it comes to the bottom line is, Your Honor, we do believe the appeal is moot. This is not the situation to a client in Lansing where they deter. Not a situation where the defendant has benefited not once by not being charged with illegal reentry in the petition, not twice by not being, having a supervisor release folks. The problem with leaving everything in place is that then you have a revocation of supervised release that might, when we're through with our in-bank processes, be determined to be invalid and we're leaving it standing and there's nothing anybody could do about it. Your Honors, if I may propose, if you would choose to remand this case back to the    I think that's just a matter of finding out whether or not it's appropriate and finding whether or not vacatur is appropriate or whether or not the timing was reasonable or reasonably necessary. I suppose it's how many additional proceedings it makes sense to have in a case where it's very easy to find him. What he could do is the marshal can find him. He's got a computer. That's correct, Your Honor. And we knew where he was. Well, there was a delay of three years. That's correct, Your Honor. And let's say the warrant was executed, you know, within a few months of when the warrant was executed. Why wasn't it executed at that time? Your Honor, the Federal government is not required to execute the warrant. I didn't say that. I said why didn't the government do it at that time? I assume, Your Honor, because the government believed that it was not required to do so until he had completed his term in Federal prison. Well, had the government filed it at that time and notified him of it, could he then have asked to have a hearing on the revocation of his probation? He did. He could have done that. And he did, Your Honor. Yeah, but he did it way in the end, right? Correct. I'm talking about at that time. You know, if it was served three years, it was served, say, within three months. He could have asked for a hearing. That's correct, Your Honor. All right. And then if the judge determined that he had to be – that he violated the terms of probation, that there ought to be additional punishment, the judge could say, well, it's going to run concurrent with the term you're now serving, or it will be added, run consecutive. He could have done that. That's true, Your Honor. But he lost the benefit. Well, Your Honor, the sentence did end up running consecutive to his federal sentence, the supervised release sentence. Yeah, but he lost the benefit of having that hearing, didn't he? And you keep him there and you don't serve that warrant until right at the end. So then you've got another good crack at him after he's served his time. That's why they do it. I mean, we're in the real world, aren't we? Absolutely. Okay. So if that's true, and if that's, you know, the game that's played, why shouldn't the whole thing be vacated? Because, Your Honor, under the law, the government is not required to execute the warrant while the defendant is in federal custody or state custody. We executed the warrant upon the completion of his term in federal custody. We immediately brought him into our federal custody in the Southern District. Okay. Then what's the purpose of having the warrant served within a reasonable period of time? Tell me. I suppose it's circular, Your Honor. It is to allow for the defendant to have notice. However, we did lodge a detainer. We lodged the detainer six months after he was in federal custody. The rule is that the king can do no wrong. I mean, this is, you know, cases. It's kind of bewildering. Okay. Well, anything else you want to say? No, Your Honor. Thank you. Okay. Thanks. Do you have some rebuttal? If I may just briefly. With respect to the notice, Mr. Juarez was never given notice back in 1999 before he was deported. When he was deported, he was under the impression that his supervised release had already expired. Therefore, when he reentered the country, he didn't have notice that he was facing these additional penalties. Now, the government at this point contests whether or not he was in fact deported. However, counsel proffered below and indicated that he had been deported, and the government never below contested that. And I would note that the government has access to Mr. Juarez's A-file. They have A-file custodians in their own building who care for their A-files. So they have access to all of this information, and if they wish to contest that below, they clearly could have contested and presented evidence that that was untrue. But there's another reason why that clearly couldn't have been the case, since he was then arrested and did time for illegal entry in the central district subsequent to that. So I think that it's just clear that he was convicted of illegal entry after deportation. Well, I believe that was the charge. I'm not sure exactly what he fled to. I don't know. But he did then he was then subsequently arrested in the central district where he did time in custody on further immigration violations. However, what I really want to point out to the Court is that under United States v. Hill, the Court has indicated that the sole purpose of extending the jurisdiction beyond the time period of supervised release is for the sole purpose of giving them time to arrest the person, for giving the authorities time to bring the person into custody. Here we have someone who is already in custody. They knew exactly where he was at, and they had the opportunity to arrest him. They didn't do that. Instead, they deported him. I have one technical question. Is the probation officer's report part of the record in the district court? The PSR from the underlying case? Yeah, the thing that provoked the warrant. Yeah, the letter that was issued. Maybe let me ask you this. I'll save me some time. I'd go get the record if I have to. Will you concede that the warrant, the application for the warrant was not under oath? Yes, absolutely. Thank you. Which is another reason why the district court lacked jurisdiction in the first instance. That's right. I don't know how much of a concession it is, though. I'd agree with that. Well, it isn't in the ER. I know that. Well, the violation report. It has that problem. It has that problem, yeah. So neither of the two prongs under 3583i in this case were met, and so for two reasons the district court lacked jurisdiction in the first instance. And that's why it would be inappropriate for this court to leave intact the district court's judgment revoking supervised release, because it was a judgment that the court never had jurisdiction to enter. All right. Thank you. Thank you. The matter is submitted. All right. We come to Zavala.
judges: Pregerson, Canby, Beezer